OPINION OF THE COURT
Joan S. Kohout, J.
In the context of this paternity proceeding, the court is asked to determine whether the presumption of legitimacy or the doctrine of equitable estoppel preclude the petitioner from asserting his claim that he is the biological father of J.C., who was bom on March 17, 2013 to the respondent mother B.C. Ms. C. and her wife J.S. assert that since J.C. was born during their marriage the presumption of legitimacy attaches and that Ms. S. has developed a parental attachment with the child such that equitable estoppel bars this paternity proceeding from going forward.
After a careful review of the testimony presented at a hearing held on August 8, 2014, and the arguments raised by the parties in their memoranda of law, the court holds that neither the presumption of legitimacy nor equitable estoppel bar Mr. M. from pursuing paternity of J.C., and that a genetic marker test must be ordered as required by Family Court Act § 532 (a) unless testing is waived by the parties.
*596 L
The paternity petition in this case was filed by Q.M. on November 18, 2013 and was initially assigned to a support magistrate. It appears that before the case came into court J.S. was added as a party respondent, presumably by direction of a support magistrate, because of her status as spouse of the child’s mother. Court records show that Mr. M. appeared before the Support Magistrate on January 29, 2014 at which time nail and mail service was directed. The court file contains a report from a private investigator indicating the difficulties he had in serving the respondents.
On March 17, 2014, the petitioner appeared with his attorney and the case was again adjourned for service. On May 1, 2014, both respondents appeared for the first time. Ms. C. appeared with counsel and Ms. S. was referred by the Support Magistrate for assigned counsel.
On May 30, 2014, all parties appeared with counsel and a handwritten notation was made on the court activity summary: “Resp is married 11/22/10 marital presumption ct requested marriage certificate equitable estoppel asserted refer to judge.” As a result, the case was transferred to this court as required by Family Court Act § 439 (c).
On July 17, 2014, the parties and counsel appeared before this court. At that time, counsel for Ms. S. reported that a divorce had been commenced and that Ms. S. did not wish any contact with the child J.C. Counsel for Ms. C. again asserted that equitable estoppel required a dismissal of the paternity petition and that a genetic marker test should not be ordered. The court appointed an attorney for J.C. and adjourned the case for a hearing.
On July 30, 2014, all parties and counsel appeared for the hearing. At that time, counsel for Ms. S. stated that her client’s position had changed and she now supported Ms. C.’s claim of equitable estoppel.
IL
Although no written motion has been filed requesting a dismissal of the paternity petition, both Ms. C. and Ms. S., who now claim to be joined in interest regarding this case, argue that it is contrary to J.C.’s best interest to permit Mr. M.’s petition to proceed. They argue that since J.C. was born during their marriage, she is presumptively the child of Ms. S. and that *597 Mr. M. should be barred from upsetting J.C.’s presumed status as a legitimate child of the marriage. Further, they argue that J.C. has an attachment to Ms. S. and that equity should bar Mr. M. from intruding in that relationship by seeking to be adjudged J.C.’s father. The attorney for J.C. concurs that it would not be in J.C.’s best interest “to disrupt the current parent-child relationship.”
m.
The essential facts in this case are not in dispute. Ms. C. has known Ms. S. since 2008 when Ms. C. was 16 years old. The couple began to reside together the following year and married on November 22, 2010 in Dover, New Hampshire. Ms. C. and Ms. S. have separated on various occasions, including a lengthy separation during 2011 and 2012. Their most recent separation began in April 2014. It is undisputed that a divorce was commenced in July 2014.
Ms. C. initially testified that she had an intimate relationship with Mr. M. off and on over two years terminating on July 23, 2012 due to domestic violence. She later testified that the relationship began during the summer of 2011. Either way, Ms. C.’s relationship with Mr. M. occurred during her marriage to Ms. S.
Ms. C. admitted that she became pregnant with J.C. as a result of sexual relations with Mr. M. and that she was not sexually involved with any other man at the time she became pregnant. Additionally, Ms. C. acknowledged that J.C. was not born as the result of artificial insemination. Ms. C. allowed Mr. M. to see J.C. on two occasions during October 2013, but there has been no visitation since the petition was filed in November 2013.
Although Mr. M. filed his paternity petition on November 18, 2013 when J.C. was only eight months old, the respondents did not appear in court until May 1, 2014. The court file documents the difficulty Mr. M. had in serving the respondents, including the need to hire a private investigator.
Ms. C. takes the position that Mr. M. should be excluded from J.C.’s life. Although she has never denied that he is J.C.’s biological father, she argues that her wife is the lawful and proper parent of J.C. She testified that she wants her “wife to have rights to my daughter as she has been.” Ms. C. acknowledges that Ms. S. never adopted J.C. and that the couple separated in April 2014.
In support of her position, Ms. C. notes that Ms. S. was at the hospital when J.C. was born, selected the child’s name and *598 signed her birth certificate. Both Ms. C. and Ms. S. testified that Ms. S. has a close relationship with J.C. and that since their separation, Ms. C. has permitted Ms. S. to have contact with the child.
IV Marital Presumption
Ms. C. argues that the presumption of the legitimacy or marital presumption that applies to a child born to a married couple requires the dismissal of this paternity petition. The court disagrees.
While there is no question that the 2010 New Hampshire marriage of Ms. C. and Ms. S. is fully recognized by New York (see Martinez v County of Monroe, 50 AD3d 189 [4th Dept 2008]; see also Domestic Relations Law § 10-a), the fact that the respondents are married to each other under the facts here does not preclude Mr. M. from pursuing this paternity petition.
It has long been presumed that the child born of a marriage was fathered by the husband. The presumption is recognized at common law (see Matter of Findlay, 253 NY 1 [1930]) and codified in Domestic Relations Law § 24 and Family Court Act § 417. Both Domestic Relations Law § 24 and Family Court Act § 417 establish that the child born before or after the marriage shall be deemed to be the legitimate child of the married couple whether or not the marriage was valid.
As noted by commentator Merril Sobie, in modern times with the advent of DNA testing, the presumption of legitimacy has been “relegated to the point of near irrelevance,” having essentially been replaced by equitable estoppel (Merril Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 417 at 285-286 [2008 ed]).
The presumption of legitimacy may be rebutted by clear and convincing proof of lack of access by the husband or other evidence excluding the husband as the father of the child (see Matter of Marilene S. v David H., 63 AD3d 949 [2d Dept 2009]; Matter of Cheryl A.B. v Michael Anthony D., 209 AD2d 966 [4th Dept 1994]).
In the past, the presumption of legitimacy was mainly applied to prevent recalcitrant husbands or former husbands from avoiding their responsibilities to support children born to their wives or former wives (see e.g. Elizabeth A.P. v Paul T.P., 199 AD2d 1030 [4th Dept 1993]). Thus, the focus was on protecting the legitimacy of the child and assuring that the child had both a father and a mother.
*599 With the advent of same-sex marriage the role of the non-biological spouse, especially in a marriage of two women, requires a reexamination of the traditional analysis of the presumption of legitimacy. Most of the cases to date concerning same-sex couples involve children born of artificial insemination where female spouses have planned together to raise the child (see e.g. Counihan v Bishop, 111 AD3d 594 [2d Dept 2013]). Recently, in the well-crafted decision of Wendy G-M. v Erin G-M. (45 Misc 3d 574 [Sup Ct, Monroe County 2014]) the Supreme Court held that in the context of a divorce of a same-sex couple, the non-biological wife was the legal parent of a child born of artificial insemination during the marriage.
Pursuant to Domestic Relations Law § 73 with the written acknowledged consent of both spouses a child born of artificial insemination is deemed the legitimate child of the marriage. In the case of same-sex female spouses, the child is generally fathered by an anonymous sperm donor and there is no legal father. Under those circumstances, the statute may easily be applied in a gender-neutral manner (see Counihan v Bishop, 111 AD3d 594 [2d Dept 2013]).
Here, the respondents seek to rely on the presumption of legitimacy to establish Ms. S. as J.C.’s second mother, effectively extinguishing J.C.’s right to have a father. Ms. C.’s credible and uncontradicted testimony at the hearing was that she did not have sexual relations with any man other than Mr. M. during the period of J.C.’s conception, and that Mr. M. is J.C.’s father. Thus, there is no dispute that Ms. S. is not, and could not possibly be, the second parent of this child. Moreover, Ms. S. reconciled with Ms. C. after Ms. C. discovered she was pregnant, and presumably after she had been told that the child was fathered by Mr. M.
Ms. C. argues that the rights of “non-biological parents” are entitled to the same constitutional protections afforded biological parents and suggests that the Marriage Equality Act requires that all spouses be treated in a completely gender-neutral manner. It is this court’s view that the Marriage Equality Act does not require the court to ignore the obvious biological differences between husbands and wives. For instance, as explained above, Domestic Relations Law § 73 can be easily applied to same-sex female married couples, but not to same-sex male couples, neither of whom are able to bear a child. In the same vein, neither spouse in a same-sex female couple can father a child. Thus, while the language of Domestic Relations Law *600 § 10-a requires same-sex married couples to be treated the same as all other married couples, it does not preclude differentiation based on essential biology.
Additionally, the Court of Appeals has repeatedly declined to expand the traditional definition of a parent beyond biological or birth parents and adoptive parents. Specifically, the Court has rejected arguments that non-adoptive or non-biological third parties, such as Ms. S., should be granted parental status based on a claim of a close relationship with the child (see Debra H. v Janice R., 14 NY3d 576 [2010]; Matter of Alison D. v Virginia M., 77 NY2d 651 [1991]).
As a result, Ms. S. stands in the position of many loving stepparents, male and female, who are not legal parents and are not entitled to court-ordered custody or visitation with their stepchildren. The fact that she was married to Ms. C. at the time of J.C.’s birth, under the facts here, does not change her status.
V Equitable Estoppel
The courts of this state have applied the doctrine of equitable estoppel in paternity and child support proceedings to ensure the best interests of children (see Matter of Shondel J. v Mark D., 7 NY3d 320 [2006]). “The purpose of equitable estoppel is to preclude a person from asserting a right after having led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted” (Matter of Shondel J. v Mark D., 7 NY3d at 326).
In this context, equitable estoppel is frequently relied on to preclude a man from denying paternity in an effort to avoid supporting a child with whom he has developed a close relationship when termination of the relationship would be detrimental to the child. For example, in Shondel J. the Court of Appeals held that a man who mistakenly believed that he was the father of a child may be estopped from denying paternity when the child relied on the man’s representations of paternity to the child’s detriment by developing a father-child relationship. Shondel J. involved a complicated international scenario involving Guyana, sworn statements of paternity, a genetic marker test that revealed that respondent was not the child’s father and conflicting testimony regarding the extent of the putative *601 father’s relationship with the child. In that case, the Court applied equitable estoppel to protect the rights of the child and to preclude the respondent from avoiding his responsibility to pay child support.
Equitable estoppel may also be used as a defense to a paternity action where a man has allowed a protracted period of time to pass before filing his petition and acquiesced in or promoted the establishment of a parent-child relationship with another man who has acknowledged paternity or married the mother. For example, in Matter of Ettore I. v Angela D. (127 AD2d 6 [2d Dept 1987]) a paternity petition was filed by a putative father when the child was two years and nine months old. The petitioner claimed that the child was born as a result of an affair he had with the mother during the marriage. However, during the intervening years the child lived in an intact family with his mother and her husband, who was a father figure for the child. Under these facts, the court applied equitable estoppel to prevent the paternity petition from going forward noting the delay in filing and negative impact it would have on the child.
Similarly, in Matter of Rason S.B. v Alexis H. (101 AD3d 710 [2d Dept 2012]), the child’s mother and Rason S.B. executed an acknowledgment of paternity when the child was bom, and Rason S.B. assumed the role as the child’s father. Two years later, Marquis H.B. learned that he was the child’s father and two years after that, Marquis H.B. brought a paternity action in Family Court. The court held that equitable estoppel provided a defense to the paternity action and dismissed the petition in the child’s best interest.
By contrast, J.C. was eight months old when Mr. M. filed the present petition and less than 17 months old at the time of the hearing. Although some evidence was presented regarding the relationship between Ms. S. and J.C., Ms. S. and Ms. C. separated in April 2014 when J.C. was just over one year old. The couple plans to divorce.
Nor was there any proof that Mr. M. acquiesced in or promoted Ms. S.’s assumption of a parental role. To the contrary, Mr. M. filed this paternity petition very shortly after his first two visits with the child. Moreover, unlike a child born as the result of artificial insemination fathered by an unknown sperm donor, J.C.’s father is known and identified by Ms. C. in her sworn testimony.
Additionally, since Ms. S. never adopted J.C. and is not a biological parent, she does not fit within New York’s definition *602 of parent. Thus, Ms. S. is not entitled to court-ordered custody or visitation with J.C., and any contact she has with J.C. is entirely by voluntary arrangement with Ms. C. (see Debra H. v Janice R., 14 NY3d 576 [2010]; see also Matter of Alison D. v Virginia M., 77 NY2d 651 [1991]). Of course, there is nothing to prevent Ms. C. from continuing to permit Ms. S. to have a relationship with J.C., as suggested by the Attorney for the Child, especially if she believes it to be consistent with her daughter’s best interest.
For all these reasons the court finds that neither the presumption of legitimacy nor equitable estoppel bar Mr. M.’s paternity action from proceeding. Therefore, the parties are directed to appear on Thursday October 30, 2014 at 11:00 a.m. so that the court may make an order directing a genetic marker test as required by Family Court Act § 532 (a), unless the parties waive the required testing.